IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

|  |  |
|---|---|
| AMERICAN SILVER LLC, AMERICAN BIOTECH LABS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL RESONANCE LLC, One Resonance Way, Havre de Grace, Maryland 21078; Harford County, <br><br> JULIANA BROOKS, 273 North East Isles, North East, Maryland 21910; Cecil County <br><br> and <br><br> MARK MORTENSON, 105 Deer Path Lane, North East, Maryland 21901, Cecil County <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br><br> C.A. No. MJG 07-2807 |

**FIRST AMENDED COMPLAINT**

Plaintiffs American Silver LLC and American Biotech Labs LLC (collectively "Plaintiffs"), by their undersigned attorneys, for their ~~complaint~~First Amended Complaint against General Resonance LLC ("General Resonance"), Juliana Brooks ("Brooks"), and Mark Mortenson ("Mortenson"), hereby allege as follows:

**NATURE OF ACTION**

1. This lawsuit seeks a judicial determination and declaration concerning the ownership of scientific ideas, know how, show how, trade secrets, concepts, proprietary and confidential information and

patent applications concerning Plaintiffs' proprietary silver technology (hereinafter the "Silver Technology") and any improvements related thereto.  Defendants induced Plaintiffs into entering more than one fiduciary relationship and then willfully, knowingly and wrongfully took, stole, and otherwise misappropriated the Silver Technology, and any improvements thereto, and used it for their own benefit in violation of Plaintiffs' rights therein.  Plaintiffs request affirmative preliminary injunctive relief requiring Defendants General Resonance, Brooks and Mortenson to take all steps necessary to preserve the Plaintiffs' proprietary Silver Technology and any improvements thereto, including, but not limited to, taking all steps necessary to preserve and continue the prosecution of patent applications worldwide related to or based upon in whole or in part the Silver Technology, and enjoining all Defendants from claiming an ownership interest in said patent applications or the technology and/or inventions disclosed and/or claimed therein.

2. Silver Technology, and any improvements thereto, is the technology at issue and concerns the use of silver and related metals in a variety of applications, including but not limited to antimicrobial, viracital, anti-inflammatory, and immunomodulator.

## **JURISDICTION AND VENUE**

3. This Court has jurisdiction over the common law and state law claims under 28 U.S.C. § 1332, as this is a matter involving claims between parties whose citizenship is diverse, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000).

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1338 as the malpractice claims concern the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

5. 4. Venue lies in the District of Maryland pursuant to 28 U.S.C. § 1391 because all Defendants reside in the State of Maryland.

## THE PARTIES

6. ~~5.~~ Plaintiff American Silver is a limited liability company organized under the laws of the State of Utah.

7. ~~6.~~ Plaintiff American Biotech Labs is a limited liability company organized under the laws of the State of Utah.

8. ~~7.~~ Upon information and belief, Defendant General Resonance is a limited liability company organized under the laws of the State of Nevada.   Upon further information and belief, Defendant General Resonance maintains a laboratory and its corporate headquarters at One Resonance Way, Havre de Grace, Maryland 21078.

9. ~~8.~~ Upon information or belief, Defendant Brooks is the Senior Managing Director of General Resonance.   Upon further information and belief, Defendant Brooks resides in the State of Maryland.

10. ~~9.~~ Upon information and belief, Defendant Mortenson maintains a law office in North East, Maryland.  Upon further information and belief, Defendant Mortenson is licensed to practice law in the State of Virginia and is licensed to practice before the U.S. Patent and Trademark Office, but is not licensed to practice law in the State of Maryland.  Upon information and belief, Defendant Mortenson is also an agent of, manager for, and general counsel for, Defendant General Resonance.

## GENERAL ALLEGATIONS

11. ~~10.~~ Plaintiffs herein incorporate by reference the allegations of paragraphs 1-~~9~~10.

12. ~~11.~~ Plaintiffs have spent many years developing Silver Technology, including refining the process of using silver in bio-medical materials to promote health and well-being.  As part of this work, Plaintiffs' Silver Technology includes the development of technology generally directed to the use of

silver and related metals in various forms to kill or to disable microorganisms (including certain viruses) which are hazardous to human beings and/or animals or other living organisms.

13. 12. The use of Plaintiffs' Silver Technology to fight malaria was and is being studied by third parties in Africa with these studies indicating that beneficial results are possible.

14. 13. On or before September 16, 2004, upon the recommendation of one of its consultants, Plaintiffs engaged Defendant Mortenson to represent their interests, including representation before various government agencies and private/public companies.  This representation included, but was not limited to, Defendant Mortenson's representation of Plaintiffs as their patent attorney – advising the Plaintiffs regarding the patentability of their inventions, prosecuting their patent applications, and counseling Plaintiffs related to technology licensing and other legal matters related to Plaintiffs' Silver Technology.  Defendant Mortenson represented that Plaintiffs would be his only client in these matters.

15. 14. Thereafter, Defendant Mortenson introduced Plaintiffs to Defendant General Resonance and recommended to Plaintiffs that they engage Defendant General Resonance in discussions to enter into a joint venture to, among other things, commercially develop Plaintiffs' Silver Technology.  Upon information and belief, at this same time Defendant Mortenson was Defendant General Resonance's general counsel and this was not known to Plaintiffs.  As well, Defendant Mortenson served in management for General Resonance and this was also not known to Plaintiffs.  Defendant Mortenson also did not explain to Plaintiffs that he intended to compete with Plaintiffs with respect to the Silver Technology and attempt to develop improvements to and design around Silver Technology.  Defendant Mortenson did not explain that conflicts could occur in his various capacities, including his capacity as general counsel, manager and agent for Defendant General

Resonance, and his capacity as competitor of Plaintiffs, while serving as patent counsel and legal advisor to American Silver, nor did he seek or obtain a conflicts waiver from Plaintiffs.

16. 15. Plaintiffs and Defendant General Resonance executed a non-disclosure agreement under which Plaintiffs disclosed to Defendant General Resonance Plaintiffs' Silver Technology including scientific ideas, know how, show how, trade secrets, concepts and proprietary and confidential information related thereto, including, but not limited to, Silver Technology designated by the parties as "Silver Particle Technology" and "Resulting Silver Particle Technology."

17. 16. While Defendant Mortenson was representing Plaintiffs, they provided Defendant Mortenson with proprietary and confidential scientific, technical, market and business information concerning their Silver Technology for purposes of prosecuting their patent applications, advising them on patentability of their inventions, advising them on protection of and how to obtain the broadest protection of and for their Silver Technology, and counseling them on licensing of their Silver Technology.   The confidential and proprietary information further included information about Plaintiffs' equipment, methods of measurement, and manufacturing methods.  Defendant Mortenson was provided with written material materials, and tutorials on the Silver Technology and was also given a complete tour of Plaintiffs' facilities and operations and development laboratories.

18. 17. On January 5, 2005, Defendant Mortenson, acting on behalf of Plaintiffs, filed a U.S. Provisional Patent Application No. 60/641,521 (the "'521 Patent Application").  The provisional application listed Robert Holladay, William Moeller, and Dilip Mehta as co-inventors of the Silver Technology disclosed in the '521 Patent Application.  William Moeller is American Silver's President and a Managing Director for American Biotech.

19. 18. After Plaintiffs filed the '521 Patent Application, on or around March 21, 2005, Plaintiffs and Defendant General Resonance entered into a Memorandum of Understanding regarding a joint venture business arrangement between the two parties.

20. 19. On June 8, 2005, in the context of negotiating the joint venture between Plaintiffs and Defendant General Resonance, Defendant General Resonance assured Plaintiffs that it intended to protect Plaintiffs' interests and help Plaintiffs with their business efforts, representing that this was the only way to form a strong partnership.

21. 20. Defendant General Resonance also promised funding to commercially develop Plaintiffs' Silver Technology, provided that Plaintiffs disclosed its novel and valuable scientific ideas, trade secrets, related technologies and confidential and proprietary information concerning their Silver Technology.

22. 21. On or before June 24, 2005, Plaintiffs and Defendant General Resonance entered into joint venture agreement titled "Omnibus Agreement" (referred to hereafter as the "Agreement"). The intent of the Agreement was to create a joint venture relationship between Defendant General Resonance and American Silver, the relationship intended to broaden and accelerate the development, improvement, commercialization and market expansion of  Plaintiffs' Silver Technology.  The Agreement provided for the formation of separate limited liability companies, Joint LLC I and Joint LLC II, which would have certain responsibilities for developing, commercializing, manufacturing and selling products based on Plaintiffs' Silver Technology and Defendant General Resonance's own prior technology, called "Resonance Technology."  Plaintiffs and Defendant General Resonance had equal ownership and equal membership interests in both limited liability companies.  Defendant Brooks signed the LLC documents, agreeing to act as a

founding manager of the LLCs.  At all times relevant to this Amended Complaint, Defendant Mortenson acted as a de facto manager of the LLCs, making business decisions for these entities in conjunction with Defendant Brooks.

23. 22. Defendant Mortenson drafted the Agreement and advised Plaintiffs regarding the Agreement, that is, while acting as counsel for Plaintiffs.  Upon information and belief, he was also acting as counsel, agent and/or manager for Defendant General Resonance, and he was acting as a competitor of Plaintiffs.  Defendant Mortenson did not receive a conflicts waiver from Plaintiffs.

24. 23. In order to induce Plaintiffs to sign the Agreement, Defendant Mortenson represented to Plaintiffs that they had to sign the Agreement in order to obtain funding from Defendant General Resonance and its sources, the funding necessary to commercially develop their Silver Technology products.  For example, several weeks before the parties signed the Agreement on or before June 24, 2005, Defendant Mortenson on behalf of Defendant General Resonance, represented that Defendant attended a meeting of American Silver's shareholders.  At that meeting, Defendant Mortenson told the shareholders that General Resonance had the money on hand to fund Plaintiffs' commercial development of the Silver Technology products, and, that once the Agreement was executed, Defendant General Resonance and its sources would immediately provide Plaintiffs with funding that was sufficient to support the commercialization efforts for the Silver Technology products, without Plaintiffs having to look to any other sources for additional funds.  $100 million available to fund the joint venture, and that if Plaintiffs signed the Agreement, General Resonance would begin making those funds available for commercialization of products produced by the joint venture.  This statement, and others like it, convinced American Silver to move forward with the joint venture with General Resonance.

25. 24. After executing the Agreement, Plaintiffs provided Defendant General Resonance with its Silver Technology, including, but not limited to scientific ideas, know how, show how, trade secrets, and other and related confidential and proprietary information.   Plaintiffs also provided Defendant General Resonance with their proprietary product manufacturing equipment and information concerning how to assemble and operate this equipment.

26. 25. Pursuant to the Agreement, and as represented by Defendant Mortenson and Defendant General Resonance, Plaintiff American Silver was to, and did maintain ownership over all its Silver Technology and any developments or improvements, including any resulting inventions based thereon regardless of who created, invented, or developed the improvement(s).   This ownership was only subject to the certain licensing rights granted to the jointly and equally owned joint ventures, to be created under the Agreement for the purpose of commercializing the Silver Technology products. Defendant General Resonance had no interest in or to the Silver Technology and improvements related thereto (under the Agreement or otherwise).

27. 26. The Agreement explicitly recognized that Plaintiff American Silver exclusively owns U.S. provisional patent application 60/641,521.

28. 27. The Agreement further required that Defendant General Resonance cooperate in the filing of patent applications as may be desirable to maximize Plaintiff American Silver's positions and holdings in its Silver Technology and any improvements related thereto.

29. 28. On July 7, 2005, just two weeks after the parties signed the Agreement, and before General Resonance's research facilities were fully operational, Defendant Mortenson filed a second U.S. Provisional Application No. 60/697,080 (the "'080 Patent Application").   The '080 Patent Application was based upon the earlier '521 Patent Application.   Defendant Mortenson did not and

any new inventive content to this second Provisional Application (the '080 Patent Application). Unbeknownst to Plaintiffs, without discussing whether there was inventive contribution and, if so, who provided the inventive contribution, and <u>without</u> Plaintiffs' consent, Defendant Mortenson added Defendant Brooks as a co-inventor with the original three (3) inventors to the '080 Patent Application.

30. ~~29.~~ Accordingly, the second provisional application, '080 Patent Application, listed Robert Holladay, William Moeller, Dilip Mehta, <u>and now erroneously</u> Defendant Brooks as co-inventors of the '080 Patent Application (which is based on the Silver Technology).  Upon information and belief, no new material was added to the patent application that would justify adding Defendant Brooks as a co-inventor and, in fact, Defendant Brooks made no contribution to the Silver Technology that is claimed.  Defendant Mortenson intentionally and knowingly added Defendant Brooks to the '080 Patent Application without Plaintiffs' consent to give Defendant General Resonance a fraudulent claim to the Silver Technology of the '080 Patent Application (as the assignee and employer of Defendant Brooks).

31. ~~30.~~ Despite acknowledging that he has a duty to name the correct inventors and to discuss the naming of inventors with his client and all other named inventors, Defendant Mortenson failed to explain to Plaintiffs the ramifications of adding an inventor to its patent application or to obtain Plaintiffs' affirmative consent prior to filing said patent application.  Upon information and belief, Defendant Mortenson intentionally failed to provide Plaintiffs with the inventor page prior to filing the '080 Patent Application.

32. ~~31.~~ On July 26, 2005, <u>only one month after the parties executed the Agreement, and still before General Resonance's research facilities were fully operational,</u> Defendant Mortenson filed a third

U.S. Provisional Application No. 60/702,494 (the "'494 Patent Application") based on the original '521 Patent Application and '080 Patent Application. No new inventive content was added to the '494 Patent Application, yet Defendant Mortenson included the original inventors of the '521 Patent Application, and unbeknownst to Plaintiffs and without Plaintiffs' permission or knowledge, Defendant Mortenson again added Defendant Brooks and a co-inventor and then, without telling the Plaintiffs and without their knowledge he wrongfully <u>also added himself as a co-inventor!</u>

33. <s>32.</s> Defendant Mortenson, acting as the attorney of record counseling the inventors and representing them before the U.S. Patent and Trademark Office added himself as a co-inventor to the patent application without the knowledge or consent of his client.  Despite acknowledging that he has a duty to discuss the naming of inventors with his client and all other named inventors, Defendant Mortenson also failed to explain the ramifications of adding himself as an inventor or obtain the Plaintiffs' affirmative consent prior to filing such a patent application.  Defendant Mortenson also failed and refused to provide the inventor page that listed the inventors of the patent application being filed to Plaintiffs when he sent them a copy of the filed '494 Patent Application.  It was only after repeated requests for the inventors page that Defendant Mortenson finally provided the inventors page, and at that time the Plaintiffs discovered that Defendant Mortenson had wrongfully and fraudulently added himself as a co-inventor.

34. <s>33.</s> The '494 Patent Application lists Robert Holladay, William Moeller, Dilip Mehta, Rustum Roy, <u>Defendant Brooks, and Defendant Mortenson</u> as co-inventors of this Silver Technology disclosed in this patent application.  Upon information and belief, no new material was added to the patent application that would justify adding Defendants Brooks or Mortenson as co-inventors.  In fact,

Defendants Brooks or Mortenson did not ~~make~~ made any contribution to the technology that is claimed.

35. ~~34.~~ The effect of the additional inventors was to dilute Plaintiffs' ownership of their Silver Technology and to wrongfully and fraudulently convert American Silvers' wholly-owned Silver Technology in part to Silver Technology in which now Defendant General Resonance, Defendant Brooks and Defendant Mortenson would claim an ownership interest, in violation of Plaintiffs' exclusive rights to own its Silver Technology and any improvements thereto.

36. ~~35.~~ Upon information and belief, Defendant Mortenson actively concealed from Plaintiffs the fact that he added co-inventors on the provisional applications.  For instance, Defendant Mortenson initially failed to provide Plaintiffs with a copy of the inventor page that had been filed with the second or third provisional application.

37. Thereafter, Defendant Mortenson falsely represented to the Plaintiffs that he and Brooks were inventors when they were not.  This representation and others as hereinafter explained, materially relied upon by Plaintiffs, caused Plaintiffs to continue to permit Defendant Mortenson to prosecute the three provisional patent applications on their behalf, all to their detriment and subsequent harms.

38. ~~36.~~ On December 30, 2005, Defendant Mortenson filed an international patent application, PCT/US2005/047699 ((the "'699 Patent Application").  The '699 Patent Application was based on the three earlier provisional patent applications – namely, the '521, '080 and '494 Patent Applications.  Defendant Mortenson listed Robert Holladay, William Moeller, Dilip Mehta, Defendant Brooks, Rustum Roy, and <u>himself</u> as co-inventors on the application.  Upon information and belief, no new material was added to the patent application that would justify adding Defendants

Brooks or Defendant Mortenson.  In fact, neither made any contribution to the technology that is claimed.

39. 37. The only non-provisional patent application filed by Defendant Mortenson for the Plaintiffs was the '699 Patent Application.  Defendant Mortenson failed and deliberately did not tell Plaintiffs that they could file a non-provisional international and United States patent application based solely on the first filed '521 Patent Application that did not list either Defendant Brooks and/or Defendant Mortenson.  Defendant Mortenson did not tell Plaintiffs nor counsel them that by filing only one non-provisional patent application on all three provisional applications listing all of the alleged inventors, that there could be and are wrongful claims of ownership of the Silver Technology in the '521 Patent Application by the Defendants due to listing Defendants Brooks and Mortenson as inventors on  the '699 Patent Application.  Defendant Mortenson failed to so counsel Plaintiffs and in so failing willfully and deliberately failed to meet his fiduciary duty to his clients the Plaintiffs.

40. 38. After entering into the Agreement, Defendant General Resonance acquired for its own purposes the Silver Technology and in violation of the Agreement began to sequester and to improve the Silver Technology while failing to provide any information to Plaintiffs.  On information and belief, such improvements, belonging to Plaintiffs, were the basis for patent applications filed in the name of one or more of the Defendants.

41. 39. In 2006, before fulfilling its obligations under the Agreement, and in contemplation of avoiding the Agreement once it acquired the Silver Technology from Plaintiffs, Defendant General Resonance in bad faith notified Plaintiffs that Defendant General Resonance sought to revise the Agreement because Plaintiffs had violated the "stewardship clause" in the Agreement.  The "stewardship clause" was a clause added to the Agreement by Defendants in contemplation of a way to avoid the

Agreement once Defendants had wrongfully acquired the Silver Technology.  Defendant Mortenson had added the "stewardship clause" to the Agreement and then advised Plaintiffs to sign the Agreement.  The "stewardship clause" provided that if Defendant General Resonance did not believe that Plaintiffs were complying with the Agreement (and without more), Defendant General Resonance could terminate it.

42. 40. Concerned that Defendant General Resonance had acquired its Silver Technology and that its ability to commercialize their Silver Technology would be compromised if the Agreement did not continue, and not knowing that Defendants were not acting in good faith, the Plaintiffs agreed to try and salvage the commercialization efforts and began negotiating changes in the parties' relationship. However, further negotiations and attempts at resolution were not possible as Defendant General Resonance had knowingly and intentionally entered into the Agreement with no intention of fulfilling its obligations and knowingly included the "stewardship clause"  in the Agreement with the intent to use it as a wrongful basis to terminate the Agreement once Plaintiffs had disclosed the Silver Technology.

43. 41. On May 16, 2006, during the parties' attempts to negotiate changes in their relationship, Defendant Mortenson sent Plaintiffs an email now claiming that, without a conflicts waiver, he could not draft any revised agreement but that he would make sure the revised agreement was fair for everyone.

44. 42. On May 25, 2006, Defendant Mortenson decided it was time to finally raise the issue of his conflicts with the Plaintiffs, and he finally notified Plaintiffs that he had a conflict of interest. Defendant Mortenson requested that Plaintiffs execute a conflicts waiver, and told Plaintiffs that any further representation by him would be limited to prosecuting the '699 Patent Application, i.e., the

international Patent Cooperation Treaty (PCT) patent application that was the only patent application he filed on the three earlier provisional patent applications, and it was the patent application that erroneously listed himself and Defendant Brooks as co-inventors.  He also represented that he would be the prosecuting attorney for all of the international and national patent applications that related in whole or in part to this patent application.  Plaintiffs did not execute the conflicts waiver.

45. 43. On July 26, 2006, Defendant Mortenson and Reed Wilcox, a high level manager at General Resonance, went to see Plaintiffs in Utah in order to convince Plaintiffs to sign the conflicts waiver. William Moeller, American Silver's President and a Managing Director for American Biotech, however, was recovering from major hip surgery at his home, was heavily medicated and unable to work.  In spite of Mr. Moeller's incapacitation, Defendant Mortenson and Mr. Wilcox went to Mr. Moeller's home when they discovered he was not at the office.  They intended to convince him to sign the conflicts waiver.  After several bedside attempts by Defendants Mortenson and Mr. Wilcox to get Mr. Moeller to sign the waiver, Mr. Moeller's wife finally had to ask Defendant Mortenson and Mr. Wilcox to leave their home.  Mr. Moeller did not sign the waiver.

46. 44. On or before June 7, 2006, Plaintiffs notified Defendant General Resonance that it was in violation of sections 9.6 and 9.10 of the Agreement for failing to provide Required Reports concerning, among other things, developments, improvements, or inventions relating to the Silver Technology.

47. 45. On or before September 8, 2006, Plaintiffs' new counsel informed Defendant Mortenson that Plaintiffs demanded the return of all the information in his possession relating to the Silver Technology.  Plaintiffs also requested reports concerning the protection of their intellectual property, including the protection of their Silver Technology and enhancements, and Resulting Silver

Technology and enhancements.  Defendant Mortenson avoided Plaintiffs' requests and failed to respond or provide the requested information.

48. 46. Thereafter, the parties ceased working together and Defendants continued to wrongfully appropriate to their own use and benefit the Silver Technology.  Plaintiffs repeatedly requested that Defendant General Resonance return their Silver Technology including their proprietary manufacturing equipment; however, to date, Defendant General Resonance has failed and refused to do so.  Further, Defendant General Resonance has failed and refused to return the Silver Technology or cease its use for improvements therefore.  Further, Defendant General Resonance has failed and refused to acknowledge Plaintiffs' sole ownership of the Silver Technology.

49. 47. On September 21, 2006, counsel for Defendant General Resonance notified Plaintiffs that Defendant General Resonance considered the Agreement terminated or void and accused Plaintiffs of, among other things, claiming ownership over Defendant General Resonance's intellectual property, misrepresentations, and unspecified violations of the Agreement.  Accordingly, Plaintiffs responded that they were not in violation of the Agreement.  Furthermore, Plaintiffs represented that they had no intention of using Defendant General Resonance's intellectual property in the future, but that they expected General Resonance to honor Plaintiffs' rights to the Silver Technology.

50. 48. On January 5, 2007, Defendant Mortenson sent a letter to Plaintiffs indicating, among other things, that he could no longer act as their counsel due to his conflicts.  The letter further explained that Defendant Mortenson was claiming an ownership interest in Plaintiffs' patent applications because he was a listed inventor, but refused to discuss with Plaintiffs how he expected to handle this situation claiming only now that it would be inappropriate for him to do so.

51. In the very same letter, Defendant Mortenson provided the first and only explanation for why he added Defendant Brooks and himself as co-inventors on Plaintiffs' patent applications. According to Defendant Mortenson, the disclosures mention the use of other metals in addition to silver. However, the use of other metals to the extent they are used, according to the disclosure of the original provisional patent application, is included within the knowledge of one of ordinary skill in the art and is not inventive.

52. Moreover, had Defendant Mortenson fully investigated Plaintiffs' technology as was his duty as patent counsel, he would have learned that as far back as 1998, American Silver had researched and tested the efficacy of the use of other metals in its technology and that these other metals are included in the original provisional patent application that does not include Brooks and Mortenson as what would have been known at the time by one of ordinary skill in the art. Further, any inventive contribution from reference to other metals was invented by the original inventors of the first provisional patent application and was not inventive contribution by either Brooks or Mortenson, if any contribution is inferred from the addition of further metals.

53. 49. In the very same letter, Defendant Mortenson provided the first and only explanation for why he added Defendant Brooks and himself as co-inventors on Plaintiffs' patent applications. According to Defendant Mortenson, the disclosures mention the use of other metals in addition to silver. However, the use of other metals to the extent they are used, according to the disclosure of the original provisional patent application, is included within the knowledge of one of ordinary skill in the art and is not inventive. Thus, Defendant Mortenson's letter does not justify or support the addition of himself and Defendant Brooks to the later patent applications filed by Defendant Mortenson for Plaintiffs. Moreover, never, before January 5, 2007, did Defendant Mortenson advise

Plaintiffs concerning the addition of Defendants Brooks or himself as inventors or the reasons therefore.  Never did he discuss such additions with the Plaintiffs.  ~~Never~~Reasonable inquiry as required of patent counsel would have disclosed that the additional information was either cumulative or was previously invented by the original inventors and not by Brooks and/or Mortenson.  Further, never did he tell Plaintiffs that arguably if Brooks and Mortenson were truly co-inventors on the later provisional patent applications, that Plaintiffs should file a separate non-provisional U.S. or PCT patent application based only on the first provisional patent application (that is, the '521 patent application) so that they could avoid listing Brooks and Mortenson as co-inventors with any colorable claim to the patent or patents that would issue on the substantial and significant underlying Silver Technology.  Furthermore, he never discussed the addition of the use of other metals with Plaintiffs or the other named inventors.  In fact, the other named inventors had considered the use of other metals, had information on the viability of other metals, and considered the use of other metals prior to any such consideration by either Brooks or Mortenson.  Indeed, neither Defendant Brooks nor Defendant Mortenson had any scientific basis for adding anything to the second or subsequent patent applications and they are not contributors of inventive content, namely contributors to the claims.

54. ~~50.~~ Later in 2007, in order to further protect their ownership of the Silver Technology abroad, Plaintiffs filed several patent applications abroad ("national phase applications"), all of which are based on the '699 patent application, that is, the PCT/US2005/047699 patent application.

55. ~~51.~~ Plaintiffs currently cannot continue to prosecute those applications because Defendants Brooks and Defendant Mortenson are now refusing to sign the appropriate forms so the applications can progress.

56. 52. On several occasions Prior to the initiation of this litigation, Plaintiffs have requested that Defendants Mortenson and Brooks sign documents necessary for the prosecution of the national phase applications in a number of countries.  With one exception (a document for a Brazilian application), both Defendants have refused to do so.  As a direct result of Defendants' refusal, the national phase application for the United Arab Emerites (UAE) has been abandoned.  Consequently, Plaintiffs cannot receive patent protection in this country, and its technology may be freely exploited by third parties in the UAE with no legal recourse for Plaintiffs.  Plaintiffs have suffered lost revenue streams associated with direct sales and licensing of its technology in this country as a result of Defendants' actions.

57.  Since the initiation of this litigation, Defendants' Mortenson and Brooks have agreed in several instances to execute documents for certain countries in which Plaintiffs' national phase applications are set to expire, but not without limitation.  Specifically, Defendants collectively have required that Plaintiffs agree to Court-issued orders containing provisions preventing foreign patent counsel from taking any final steps necessary for the issuance of a patent in a particular country without either the further consent of Defendants, or upon order of the Court.  Moreover, Defendants have refused to agree to execute necessary documents for all countries that require them, and have indicated they will proceed with each request on a country-by-country basis.  Defendants have informed Plaintiffs that a court order will be necessary with respect to each country going forward.

58. 53. Defendant Mortenson is affirmatively claiming an ownership interest over the patent applications and related scientific ideas and refusing to acknowledge Plaintiffs' title in the Silver Technology. Thus far, Defendant Mortenson has refused to provide the basis for his claim of ownership and that

he helped conceive of or reduce to practice any part of the invention disclosed in the third provisional patent application, the PCT application or any applications based thereon.

59. 54. Defendant Brooks is affirmatively claiming an independent ownership interest over the patent applications and related scientific ideas.  In an email to Plaintiffs' counsel dated August 7, 2007, Defendant Brooks affirmatively claims an ownership interest in the patent applications and refuses to acknowledge Plaintiffs' ownership.  According to Defendant Brooks, her pre-existing spectral technology is somehow included in the provisional applications and the PCT application, but she fails to cite a single claim in the patent applications that is based upon something she either conceived of or reduced to practice.  Upon information and belief,  there is no spectral technology added to the application and the technology of all of the patent applications referenced herein was invented by the Plaintiffs and Plaintiffs' inventors and employees, with no inventive contribution by Defendants.

60. 55. Upon information and belief, Defendants Brooks and Mortenson have fraudulently asserted an ownership interest in the Silver Technology and improvements thereto despite knowledge that neither one of them contributed to the patent pending inventions of the Silver Technology, and to the extent that there may be contributions that are not part of the patent applications referenced herein, said Defendants have failed to acknowledge Plaintiffs' ownership of said Silver Technology and improvements.

61. 56. Defendants are using their fraudulently obtained ownership interest to prevent Plaintiffs from protecting Plaintiffs' rights to the Silver Technology and related improvements.  For instance, in an email dated August 3, 2007, counsel for Defendant General Resonance accused Plaintiffs of

misconduct and misappropriation because Plaintiffs filed national phase applications based on the PCT '699 patent application.

62. 57. Upon further information and belief, Defendants Mortenson and Brooks are purposefully using their fraudulently obtained ownership interest to prevent Plaintiffs from pursuing the national phase applications with the specific intent to prevent any patents from issuing from those patent applications.  That is, Defendants would rather see the Silver Technology of Plaintiffs pass into the public domain for them to use, and claim ownership in the improvements that they have not disclosed to Plaintiffs, than allow Plaintiffs to protect their Silver Technology and prevent Defendants from practicing the Silver Technology and its improvements.

63. 58. At the same time that they are wielding their fraudulently obtained rights and refusing to sign documents necessary for the prosecution of the national phase applications, Defendants Mortenson and Brooks are insisting that their names and the purported intellectual property be removed from the national phase applications and the PCT applications because they erroneously claim the patent applications include information concerning unethical studies using the Silver Technology in Africa.  Yet, within some of the very same correspondence, they refuse to assign their rights to Plaintiffs.

64. 59. Plaintiffs are generally aware that Defendant Mortenson has since used the confidential and proprietary information that he gained through representing them in his own patent applications that Plaintiffs believe Defendant Mortenson claims are improvements to Plaintiffs' Silver Technology.  In addition, Defendant General Resonance has not returned Plaintiffs' proprietary manufacturing equipment and, upon information and belief, is still using that equipment for further development of improvements to Plaintiffs' Silver Technology that Defendant General Resonance is wrongfully claiming as its own.

65. 60. Upon information and belief, Defendant General Resonance, Defendant Brooks and Defendant Mortenson are using Plaintiffs' Silver Technology, including their core technology and scientific ideas, without their consent, and filing patent applications both in the U.S. and abroad based on the confidential and proprietary information provided to them by Plaintiffs.  At the same time they are intentionally preventing Plaintiffs from prosecuting their patent applications in the U.S. and abroad.  For instance, upon information and belief, Defendant Mortenson has gone as far as wrongfully terminating Plaintiffs' contractual arrangement with its foreign counsel by instructing its foreign counsel to stop prosecuting Plaintiffs' national phase applications because he claims that these patent applications now conflict with his own patent applications.  Defendant Mortenson as Plaintiffs' patent counsel has instructed Plaintiffs' foreign counsel to cease all further representation of Plaintiffs because it conflicts with the foreign counsel's representation of him and his own patent applications!  As a result of Defendant Mortenson's instructions, foreign counsel hired by Plaintiffs have indeed stopped prosecuting Plaintiffs' national phase patent applications and Plaintiffs have been forced to seek substitute foreign counsel.

66. 61. Defendant Mortenson is not licensed to practice law in Maryland yet he represents that he practices law in Maryland; he does practice law in Maryland without a license, and without a license in Maryland he counsels and represents clients on patents, copyrights, trademarks, trade secrets, licensing and related general business and contract matters.

67. 62. Upon information and belief, Defendant Mortenson is practicing law in the State of Maryland without a license in direct violation of the laws of the State of Maryland.

68. 63. Upon information and belief, Defendant Mortenson is licensed to practice law in Virginia but does not maintain an office there.  Upon information and belief, Defendant Mortenson is violating

the laws of the State of Virginia as it is unlawful for an attorney licensed in Virginia to practice law in another state where he is not licensed.

69. 64. Defendant Mortenson is also in violation of the laws governing practice before the U.S. Patent and Trademark Office as it is a violation of the rules and regulations governing patent attorneys for a patent attorney to add his name to a client's patent application without counseling his client that he intends to do so and without his client's consent.

## COUNT I
### (Declaration of Ownership)

70. 65. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-64.69.

71. 66. Plaintiffs dispute any assertions that Defendants have any ownership interest in Plaintiffs are the lawful owners of the bundle of rights encompassed by the Silver Technology, including, but not limited to,  Those rights include not only related scientific ideas, improvements, and/or the inventions described in any of the patent applications referenced hereunder, (namely the U.S. provisional patent applications, PCT/US2005/047699, or applications based thereon.), but also any such ideas, improvements and/or inventions described in the national phase applications currently under prosecution in numerous other countries.  Those rights further include all proprietary and confidential information Plaintiffs shared with Defendants in the course of the joint venture, including all trade secrets, and "know how" and "show how" in the underlying technology.

67. Plaintiffs are the owners of all rights in the Silver Technology, and improvements thereto, including the U.S. provisional patent applications, PCT/US2005/047699, and applications based thereon.

72. Defendants now claim an ownership interest in the Silver Technology, and base that claim, not upon the contribution of inventive content, but rather upon their own unlawful conduct in inducing

Plaintiffs to share their technology with Defendants.  Plaintiffs dispute any assertions that Defendants have any ownership interest in the Silver Technology or that Defendants made any inventive contribution to that technology as described in the patent applications.

73. 68. An actual case or controversy exists between Plaintiffs and Defendants concerning the ownership of the ~~patent applications because Defendants have steadfastly denied~~ bundle of rights encompassed by the Silver Technology for several reasons, including, but not limited to: 1) as demonstrated by the abandonment of the UAE application due to the refusal of Defendants Mortenson and Brooks to execute the necessary documentation, Plaintiffs have suffered a concrete, demonstrable harm; 2) Defendants continue to deny that Plaintiffs are the ~~owners of the subject technology.~~ proper owners of the Silver Technology and have placed unnecessary pre-conditions on the future execution of necessary national phase documentation.  These conditions include requiring Plaintiffs' consent to Court-issued orders which prevent foreign patent counsel from taking final steps necessary for the issuance of a patent without either further consent by Defendants or an order of this Court.

74. 69. There is thus a justiciable controversy between the parties that triggers the jurisdiction of this Court. Plaintiffs therefore seek a declaration that they own all the interests in the Silver Technology, and improvements thereto, including the U.S. provisional patent applications, PCT/US2005/~~047699~~047699, the national phase applications pending in foreign countries and any applications based thereon without interference from the Defendants.

75. Plaintiffs may not obtain this relief before the PTO as the PTO has no jurisdiction over the foreign applications, and no power to determine the proper owner of the broader property rights in the Silver Technology as described above.

76. 70. Unless Defendants are enjoined from doing so, they will continue to assert ownership over Plaintiffs' Silver Technology, and improvements and related patent applications, and will continue to interfere with Plaintiffs' ability to prosecute the pending patent applications.  Moreover, by virtue of the orders Defendants have required be entered in this case, Plaintiffs' ability to obtain ultimate patent protection is held in limbo until this controversy is resolved by this Court.

<u>COUNT II</u>
**(Fraud by Misrepresentation Against Defendant Mortenson)**

77. 71. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-70.76.

72. Upon information and belief, Defendant Mortenson knowingly or with reckless disregard of the truth, falsely represented who were the true inventors of the technology disclosed in the patent applications and added himself and Defendant Brooks as co-inventors without evidence to support that they conceived of the invention or helped reduce it to practice.

73. Upon information and belief, Defendant Mortenson knowingly or with reckless disregard of the truth, falsely added text to the disclosure in the patent applications and claimed it to be inventive, when it is not, and said addition was without a basis and without consulting Plaintiffs or the true inventors.

74. Defendant Mortenson knowingly or with reckless disregard of the truth, falsely represented to Plaintiffs that he was licensed to practice law in the State of Maryland.

78. In the course of his representation of Plaintiffs, both with respect to the patent prosecution work he undertook, and in his general legal advice to Plaintiffs in their dealings with General Resonance, Defendant Mortenson engaged in a pattern of both concealment and misrepresentation designed to wrest ownership and control of the Silver Technology away from Plaintiffs and secure unlawful ownership and control of it for himself, Ms. Brooks and their employer, General Resonance.

79. Mortenson filed the '080 Patent Application adding Defendant Brooks as a co-inventor when he knew that Brooks had no contributed no inventive content to the application, but he concealed from Plaintiffs his intent to add Brooks as a co-inventor, and also concealed the fact of her addition by intentionally failing to provide Plaintiffs with the application page prior to filing the '080 Patent Application.  Several days after he filed the '80 Patent Application,  Defendant Mortenson justified the addition of Brooks by telling Scott Moeller at American Silver that Brooks was added because she had contributed inventive content to the application.  Plaintiffs justifiably relied upon this statement, believing Defendant Mortenson was acting in their best interests.  As a result, Plaintiffs allowed Defendant Mortenson to continue prosecuting the patents.

80. On or about July 26, 2005, Defendant Mortenson filed the '494 Patent Application, this time adding both himself and Defendant Brooks as co-inventors when he knew neither he nor Brooks contributed any inventive content to the application.  Once again, Defendant Mortenson concealed from Plaintiffs his intent to add himself and Brooks as co-inventors, and also concealed the fact of their addition by intentionally failing to provide Plaintiffs with the application page prior to filing the '494 Patent Application.  After Plaintiffs discovered approximately one week later that Defendant Mortenson had added himself and Defendant Brooks to the application, Defendant Mortenson justified the additions by telling Scott Moeller at American Silver that this time both Defendants Mortenson and Brooks had added inventive content.  Plaintiffs justifiably relied upon this statement, again believing Defendant Mortenson was acting in their best interests.  Once again, American Silver allowed Defendant Mortenson to continue prosecuting the patents.

81. Defendant Mortenson lied to American Silver about the purportedly new inventive content on the applications.  The claims concerning the use of other metals would have been obvious to someone of

ordinary skill in the art and are therefore not novel.  Moreover, had Mortenson made a proper inquiry of his alleged client, he would have learned that American Silver had researched the use of other metals years before.  The fact that Mortenson filed the second and third applications only two and four weeks after the parties signed the Agreement, and before General Resonance's research facilities were fully operational, further demonstrates the fraudulent nature of Mortensen's statements.

82. Plaintiffs' reasonable reliance on these statements led them to allow Defendant Mortenson to continue to prosecute the patents such that Defendants Mortenson and Brooks now claim ownership over the technology described in the applications through the filing of one PCT patent application on all three provisional patent applications rather than three separate PCT applications.  Had Defendant Mortenson not made these statements to Plaintiffs, there would be no co-mingling of the alleged inventive content from Brooks and Mortenson with the Silver Technology.

83. 75. Upon information and belief In addition to the forgoing, Defendant Mortenson knowingly or with reckless disregard of the truth, falsely represented to Plaintiffs at a shareholder meeting several weeks before the parties signed the Agreement on or before June 24, 2005 that Defendant General Resonance would and could fund commercial development of Plaintiffs' Silver Technology.

84. 76. Upon information and belief, Defendant Mortenson made the fraudulent representations for the purpose of defrauding Plaintiffs of their ownership interest in the patent applications, Silver Technology, and improvements thereto with the intent to induce Plaintiffs to enter into the Omnibus Agreement, and hire Defendant Mortenson to prosecute the patent applications and otherwise provide legal counseling.

85. 77. Plaintiffs reasonably relied on Defendant Mortenson's representations when they entered into the Agreement, hired Defendant Mortenson based upon these fraudulent misrepresentations, continued prosecuting the patent applications at issue here, and disclosed their Silver Technology.

86. 78. As a result of Defendants' fraudulent misrepresentations, Plaintiffs cannot protect their rights in the Silver Technology and improvements thereto.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto, and Plaintiffs request that the Defendants be required to assign to Plaintiffs all patents and patent applications that refer or relate to the Silver Technology whether filed by Plaintiffs or any or all of the Defendants.

## COUNT III
**(Fraud by Misrepresentation Against Defendant General Resonance)**

87. 79. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-78.86.

88. 80. Defendant General Resonance, through its agent Defendant Mortenson, knowingly or with reckless disregard of the truth represented to Plaintiffs that they would provide funding to develop the Silver Technology, and that they would look out for Plaintiffs' interests.

89. Defendant Mortenson falsely represented to Plaintiffs at a shareholder meeting several weeks before the parties signed the Agreement on or before June 24, 2005 that Defendant General Resonance would and could fund commercial development of Plaintiffs' Silver Technology.

90. Defendant Mortenson made this statement while acting as General Resonance's counsel within the scope of his employment with General Resonance.  As such, Defendant Mortenson was General

Resonance's agent and all misrepresentations made by Mortenson are attributable to General Resonance under the doctrines of agency and/or respondeat superior.

91. 81. Defendant General Resonance made the fraudulent representation with the purpose of defrauding Plaintiffs of their ownership interest in the Silver Technology and improvements thereto, including the patent applications, with the intent to induce Plaintiffs to enter into the Agreement.

92. 82. Plaintiffs reasonably relied on these representations when they entered into the Agreement, and disclosed their proprietary Silver Technology.

   Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto, and Plaintiffs request that the Defendants be required to assign to Plaintiffs all patents and patent applications that refer or relate to the Silver Technology whether filed by Plaintiffs or any or all of the Defendants.

## COUNT IV
### (Breach of Fiduciary Duty Against Brooks and Mortenson)

93. 83. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-82.92.

94. At the time the parties entered into the Agreement, Defendant Brooks signed the operating agreements for the LLCs and agreed to act as a founding manager of these entities. Additionally, Defendant Mortenson, at all times relevant to the Amended Complaint, acted as a de facto manager of the LLCs, making business decisions in conjunction with Brooks.

95. 84. Plaintiffs engaged Defendant Mortenson to prosecute the patent applications concerning the Silver Technology and improvements thereto. Pursuant to this relationship, Plaintiffs disclosed

~~their~~As managers of the LLCs, Defendants Brooks and Mortenson owed American Silver, one of the LLCs' members, a fiduciary duty of care with respect to the proprietary, novel and/or confidential scientific ideas and know-how ~~to Defendant Mortenson.~~that American Silver disclosed to Defendants under the Agreement.

~~85. As Plaintiffs' attorney, Defendant Mortenson owed Plaintiffs a fiduciary duty of due care, and was required to disclose any conflicts of interest, obtain the proper waivers for any conflicts of interest and to act for the Plaintiffs' benefit, and not his own or Defendant General Resonance.~~

96. ~~86. Defendant~~Defendants Brooks and Mortenson with actual malice breached ~~his~~the duty owed to Plaintiffs by claiming an interest in the Silver Technology and improvements thereto that was and is adverse to Plaintiffs' interest and by using Plaintiffs' confidential information for ~~his~~their personal gain and/or the gain of Defendant General Resonance.

97. ~~87.~~ As a result of ~~Defendant~~Defendants Mortenson~~'s breach of his~~ and Brooks breaches of fiduciary duty, Plaintiffs cannot protect their rights in the Silver Technology and improvements thereto, nor can Plaintiffs freely enjoy those rights as those rights are clouded by the wrongful claim to those rights by Defendants.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto and an order requiring Defendants to assign all interest they may claim to any Silver Technology or any improvements related thereto to Plaintiffs.

## COUNT V
### (Fraud by Concealment Against Defendant Mortenson)

98. 88. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-87-97.

99. As described above, in the course of his representation of Plaintiffs, both with respect to the patent prosecution work he undertook, and in his general legal advice to Plaintiffs in their dealings with General Resonance, Defendant Mortenson engaged in a pattern of both concealment and misrepresentation designed to wrest ownership and control of the Silver Technology away from Plaintiffs and secure unlawful ownership and control for himself, Ms. Brooks and their employer, General Resonance.

100. 89. Defendant Mortenson owed a duty to Plaintiffs to disclose that: (i) he was not licensed to practice law in Maryland; (ii) he added himself and Defendant Brooks as co-inventors on the provision patent applications; (iii) he did not represent Plaintiffs for purposes of negotiating and executing the Agreement; and (iv) he believed he was acting in a scientific capacity.

101. 90. Upon information and belief, Defendant Mortenson failed to disclose these facts with the intent to deceive, mislead and alter Plaintiffs' actions with regard to the provisional patent applications, the disclosure of proprietary, novel, confidential information and scientific ideas, and the joint venture with Defendant General Resonance.

102. 91. Plaintiffs justifiably relied upon this concealment when they (i) hired Defendant Mortenson to prosecute the patent applications and counsel them on legal matters; (ii) allowed him to file the second and third provisional patent applications; (iii) entered into the Agreement; and (iv) disclosed proprietary, novel, confidential information concerning its Silver Technology to Defendant Mortenson.

103. 92. As a result of Defendant Mortenson's fraud, Plaintiffs cannot protect their rights in the Silver Technology and improvements thereto, or prosecute the national phase of their patent applications.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto and an order requiring Defendants to assign all interest they may claim to any Silver Technology or any improvements related thereto to Plaintiffs.

## COUNT VI

### (Constructive Fraud Against Defendant Mortenson)

93. Plaintiffs herein incorporates by reference the allegations in paragraphs 1-92.

94. Plaintiffs employed Mortenson to prosecute the U.S. provisional patent applications, PCT/US2005/047699, and applications based thereon.

95. Defendant Mortenson breached a duty owed to Plaintiffs when he added Defendant Brooks and himself as a co-inventors on the provisional patent applications and PCT applications without Plaintiffs' knowledge or consent. Upon information and belief, Defendant Mortenson actively tried to conceal the fact that he made these additions.

96. As a result of Defendant Mortenson's fraud, Plaintiffs cannot protect their rights in the Silver Technology or improvements thereto, or prosecute the national phase of their patent applications.

Wherefore, Plaintiffs request compensatory damages, with interest, cost and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto and an order requiring Defendants to assign all interest they may claim to any Silver Technology or any improvements related thereto to Plaintiffs.

## COUNT VII

### (Breach of Contract Against Defendant General Resonance)

104. 97. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-96.103.

105. 98. Pursuant to the Agreement, Defendant General Resonance was contractually obligated to cooperate in maximizing Plaintiffs' Silver Technology and improvements related thereto, including all such intellectual property and technology, and the prosecution of patent applications such Silver Technology (e.g., based upon PCT/US2005/047699).  However, Defendant General Resonance has not fulfilled this obligation and has instead undermined Plaintiffs' ownership over such technology.

106. 99. Defendant General Resonance was also obligated by the terms of the Agreement to provide financial and technical reports to Plaintiffs regarding work performed by Defendant General Resonance under the Agreement and the progress of any relevant technology.  Defendant General Resonance failed to provide such reports.

107. 100. Defendant General Resonance further breached its agreement with Plaintiffs to provide funding to further develop Plaintiffs' technology if Plaintiffs certain confidential information about that technology.  Plaintiffs performed pursuant to that Agreement and disclosed their proprietary, novel information or scientific ideas.  Defendant General Resonance, however, has not fulfilled its obligation.

108. Defendant General Resonance also breached the provisions of the Agreement in which the parties agreed that the Silver Technology and all improvements thereon would be the property of Plaintiffs.  Contrary to those provisions, Defendant General Resonance and its agents Mortenson and Brooks have now claimed ownership interests in the Silver Technology.  Such a claim would not have been possible had Plaintiffs not shared their technology with General Resonance pursuant to the Agreement.  In essence, Defendant General Resonance has used its agents Mortenson and Brooks (not signatories to the Agreement) to breach the Agreement's provisions on the ownership of the Silver Technology.

109.   ~~101.~~ As a result of ~~this breach~~these breaches, Plaintiffs cannot protect their rights in the Silver Technology or improvements related thereto.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas improvements thereto and an order requiring Defendants to assign all interest they may claim to any Silver Technology or any improvements related thereto to Plaintiffs.

**COUNT ~~VIII~~VII**
**(Conversion Against All Defendants)**

110.   ~~102.~~ Plaintiffs herein incorporate by reference the allegations in paragraphs 1-~~101.~~109.

111.   ~~103.~~ Upon information and belief, Defendants have intentionally and with actual malice converted Plaintiffs' patent applications in order to deprive Plaintiffs of their ownership rights in the Silver Technology and improvements related thereto, including rights to exclude others from using the information, license the information, or prosecute patent applications concerning the information.

112.   ~~104.~~ Defendants' conversion of Plaintiffs' patent applications was without Plaintiffs' permission and, upon information and belief, without justification.

113.   ~~105.~~ Defendants are currently exercising dominion over Plaintiffs' patent applications by refusing to allow Plaintiffs to continue prosecuting applications.

114.   ~~106.~~ As a result of Defendants' conversion, Plaintiffs cannot protect their ownership interests in the Silver Technology or improvements related thereto.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and

appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas improvements thereto and an order requiring Defendants to assign all interest they may claim to any Silver Technology or any improvements related thereto to Plaintiffs.

## COUNT ~~IX~~VIII
### (Misappropriation of Scientific Ideas Against all Defendants)

115. ~~107.~~Plaintiffs herein incorporate by reference the allegations in paragraphs 1-~~106.~~114.

116. ~~108.~~At all times, Plaintiffs and Defendants maintained a confidential relationship.

117. ~~109.~~Defendants were presented with scientific ideas to serve as the basis for the further development of Plaintiffs' Silver Technology.

118. ~~110.~~Plaintiffs invested substantial time in developing their scientific ideas related to their Silver Technology.

119. ~~111.~~Plaintiffs have a protectable property interests in those scientific ideas.

120. ~~112.~~Defendants took and used, without any right or color of right, and with actual malice, the scientific ideas without any compensation to Plaintiffs.

121. Defendants represented to Plaintiffs that they would be compensated by Defendants for any use of their scientific ideas based on Plaintiffs disclosure of those ideas. Plaintiffs relied on those representations as the basis for disclosure of the scientific ideas.

122. ~~113.~~Plaintiffs have been injured by Defendants conduct.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from using said scientific ideas related to the Silver Technology and requiring the Defendant to assign any improvements to the scientific ideas to Plaintiffs.

## COUNT ~~X~~IX
### (Negligent Misrepresentation Against Defendant Mortenson)

123. ~~114.~~Plaintiffs herein incorporate by reference the allegations in paragraphs 1-~~113.~~122.

124. 115. Defendant Mortenson owed a duty of care to Plaintiffs, but negligently represented to Plaintiffs that he was an attorney licensed by the State of Maryland to counsel them on matters concerning patents, copyrights, trademarks, trade secrets, or licensing.contract negotiations and the joint venture with General Resonance.

125. 116. Upon information and belief, Defendant Mortenson intended that Plaintiffs would rely upon this representation and knew that they would hire him to counsel them on legal matters and to prosecute patent applications concerning Plaintiffs' Silver Technology.

126. 117. Plaintiffs justifiably relied upon Defendant Mortenson's representation and hired him to counsel them on legalgeneral business and contract matters and to prosecute patent applications concerning the Silver Technology.  Defendant Mortenson took advantage of Plaintiffs' reliance on his professional services and wrongfully and without Plaintiffs' knowledge or consent added himself and Defendant Brooks as co-inventors on the Plaintiffs' patent applications.

127. 118. As a result of Defendant Mortenson's misrepresentations, Plaintiffs cannot protect their rights in the Silver Technology or improvements related thereto.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas improvements thereto and an order requiring Defendants to assign all interest they may claim to any Silver Technology or any improvements related thereto to Plaintiffs.

## COUNT XIX
### (Tortious Interference with Contract Against Defendant Mortenson)

128. 119. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-118.127.

129. 120. Upon information and belief Defendant Mortenson knew that Plaintiffs had contracted with several foreign counsel to prosecute their national phase patent applications.  Defendant Mortenson knowingly and intentionally interfered with Plaintiffs' contractual relationship with these counsel in order to prevent Plaintiffs from prosecuting their patent applications.

130. 121. Certain foreign counsel have stopped prosecuting Plaintiffs' national phase patent applications.

131. 122. As a result of Defendant Mortenson's conduct, Plaintiffs cannot protect their rights in the Silver Technology or improvements thereto.

Wherefore, Plaintiffs request compensatory damages, with interests, costs and fees, to be determined at trial, but no less than $50 million, and punitive damages to be determined at trial.

## COUNT ~~XII~~XI
### (Legal Malpractice Against Defendant Mortenson)

132. 123. Plaintiffs herein incorporate by reference the allegations in paragraphs 1-~~122.~~131.

133. 124. Plaintiffs hired Defendant Mortenson to represent them during the drafting of the Agreement and to otherwise legally counsel Plaintiffs and to prosecute patent applications to protect Plaintiffs' ownership of the Silver Technology and improvements thereto.

134. 125. Defendant Mortenson with actual malice breached his reasonable duties in this regard when he failed to disclose his conflicts of interest and added himself and Defendant Brooks as inventors on Plaintiffs' patent applications.  Defendant Mortenson further breached his reasonable duties when he failed to inquire, and therefore did not learn, that American Silver had researched the use of other metals in the Silver Technology years before Mortenson filed the patent applications.  As a result of this failure, Defendant Mortenson has erroneously claimed the use of other metals as his and Brooks' invention.

135. 126. As a result of Defendant Mortenson's unethical conduct, Plaintiffs are unable to protect their rights in the Silver Technology or improvements thereto.

Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto, and Plaintiffs request that the Defendants be required to assign to Plaintiffs all patents and patent applications that refer or relate to the Silver Technology whether filed by Plaintiffs or any or all of the Defendants.

**COUNT ~~XIII~~XII**
**~~(Civil Conspiracy Between Defendants Mortenson and General Resonance)~~**
**(Misappropriation of Trade Secrets)**

136. 127. Plaintiffs herein incorporate by reference the allegations in paragraphs 1- ~~126.~~135.

~~128. Upon information and belief, Defendant Mortenson and General Resonance by agreement or understanding acted together to make fraudulent misrepresentations to Plaintiffs with the intent of inducing Plaintiffs to enter into the Agreement and with the intent to deprive Plaintiffs of their ownership of the Silver Technology and improvements thereto.~~

~~129. Defendant Mortenson, an employee of General Resonance, misrepresented to Plaintiffs that he would act as their counsel in negotiating the Agreement, provide legal counsel and prosecuting patent applications to protect their Silver Technology and improvements thereto with the intent to induce Plaintiffs to enter into an agreement with Defendant General Resonance. Defendant breached the duty he owed to Plaintiffs with the intent of defrauding Plaintiffs of their ownership interest in the Silver Technology and improvements thereto.~~

130. Defendant General Resonance misrepresented to Plaintiffs that it would fund further development of the Silver Technology, look out for Plaintiffs' interest, respect Plaintiffs' ownership over the Silver Technology and scientific ideas, and aid in prosecuting patent applications to protect that technology and those ideas with the intent of inducing Plaintiffs to enter into the Agreement. Defendant General Resonance had its employee act as representative for Plaintiffs, and led them to believe he was looking out for Plaintiffs' interests and not Defendant General Resonance's or Defendant Brooks.

131. Neither Defendant General Resonance nor Defendant Mortenson had any intention of following through with their obligations to Plaintiffs.

132. As a result of Defendants' conspiracy, Plaintiffs cannot protect their rights in the Silver Technology and improvements thereto.

137. Subsequent to the filing of patent applications described herein, Plaintiffs made improvements to its Silver Technology, including but not limited to improvements to the optimal settings for the operation of reactors. These improvements were not publicly disclosed. Plaintiffs devoted substantial time, effort, and money to developing these improvements.

138. Plaintiffs enjoy a competitive advantage in the marketplace because of the improvements made to their Silver Technology.

139. The improvements to the technology are not generally known in the industry, and Plaintiffs have taken affirmative steps to preserve the secrecy of these improvements as trade secrets by limiting the number of employees with knowledge, and requiring employees and others to sign nondisclosure agreements.

140. Defendants obtained knowledge of Plaintiffs' trade secrets via the joint venture, and specifically the nondisclosure agreement executed by the parties.  Plaintiffs shared their trade secret information with Defendants in the course of assisting Defendants with the set up and operation of reactors, and by other means as well.  Plaintiffs shared with Defendants trade secret information that was needed to operate the reactors optimally.

141. Defendants are using knowledge of the trade secrets to the Plaintiffs' detriment by using the trade secrets disclosed to them for manufacturing commercialized products.

        Wherefore, Plaintiffs request compensatory damages, with interest, costs and fees, to be determined at trial, but no less than $50 million, punitive damages to be determined at trial, and appropriate injunctive relief enjoining Defendants from asserting any ownership interest in Silver Technology and improvements, including any patent applications or scientific ideas and improvements thereto, and Plaintiffs request that the Defendants be required to assign to Plaintiffs all patents and patent applications that refer or relate to the Silver Technology whether filed by Plaintiffs or any or all of the Defendants.

**JURY DEMAND**

142. 133. Plaintiffs hereby exercises their Rule 38(b) demand for jury trial for all issues in this pleading that are triable as of right to a jury.

        WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Enter an order declaring that Plaintiffs are the owner of the Silver Technology disclosed in the U.S. provisional patent applications, PCT/US2005/047699047699, the national phase patent applications and/or patent applications based thereon.

B.     Enter an order declaring that Plaintiffs are the owner of the Silver Technology, including scientific ideas, related proprietary information, the U.S. provisional patent applications, PCT/US2005/047699, the national phase patent applications and/or applications based thereon.

C.     Grant Plaintiffs affirmative injunctive relief requiring Defendants Brooks and Mortenson to assist Plaintiffs in prosecuting the U.S. provisional patent applications, PCT/US2005/047699, and applications based thereon.

D.     Enter and order transferring and assigning all of the patent applications, scientific ideas and any other proprietary information related to improvements of the Silver Technology by any of the Defendants to the Plaintiffs.

E.     Enter an order permanently enjoining the Defendants, their representatives, assignees or successors, or any subsidiaries, divisions, agents, servants, employees of the defendant, and/or those in privity with the Defendants from asserting ownership over and conveying any interest in U.S. provisional patent applications, PCT/US2005/047699 and applications based thereon, or any applications direct to Plaintiffs' Silver Technology or improvements thereto.

F.     Award Plaintiffs compensatory and punitive damages against each of the Defendants and against them jointly and severally.

G.     Award Plaintiffs their attorney fees, costs, and expenses; and

H.     Grant Plaintiffs any such other and further relief as may be just and appropriate.


                              Respectfully submitted,


Date: _____December 21, 2007_____/s/_____

_____ JoAnna M. Esty (No. 02648)
George F. Ritchie (No. 22408)
Venable LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201
(410) 244-7400
Fax: (410) 244-7742
gfritchie@venable.com